# GOTLIB LAW

April 13, 2023

***Via*** **ECF (version with Exhibit A redacted) & E-mail (version with Exhibit A unredacted)[1]**

The Honorable J. Paul Oetken
United States District Court Judge
U.S. District Court for the Southern District of New York
40 Foley Street
New York, New York  10007

                Re:    *United States v. Lawrence, et al. (Derrick Casado),* 19 Cr. 761 (JPO)

Dear Judge Oetken:

Derrick Casado made terrible choices. He accepts full responsibility for his choices and their outcomes, whether intended or unintended. Some of those choices led to a person dying. That hard reality haunts him every day. In accepting responsibility, he has recognized that just as the consequences of his actions were tremendously serious so too must be his punishment. He acknowledged this when he agreed to spend no less than fifteen years incarcerated as penance for his conduct. We now respectfully ask the Court to consider a sentence of fifteen years. We make this request based on the following factors:

- Derrick did not intend for anyone to die.
- Derrick was a teenager under the influence and direction of older men whom he was seeking acceptance and protection from at the time of the robbery that resulted in the death of a person.
- Derrick is required to be sentenced to a term of imprisonment in excess of the two most culpable defendants in this case.
- Derrick has severe developmental issues and at the time of the crime was suffering from serious substance abuse addiction.
- Derrick has been locked up under harsh conditions and has suffered under those unduly punitive conditions for over three years straight.
- Derrick accepts full responsibility for his actions and is extremely remorseful.

## I. The United States Sentencing Guidelines Advisory Range And The Presentence Report

In the plea agreement, the parties stipulated to a United States Sentencing Guidelines ("Guidelines") range of 255 to 288 months' imprisonment, with a mandatory minimum sentence of 180 months' imprisonment. The calculation contained in the Presentence Investigation Report ("PSR") accurately mirrors the Guidelines calculation contained in the plea agreement.

---

[1] Given the sensitive nature of the information contained in Exhibit A concerning Derrick's mental health, we respectfully request that Exhibit A in its entirety be filed under seal. We will email Exhibit A to the Court and the government after filing the redacted version on ECF.

The Probation Office recommends that the Court apply a downward variance to the advisory Guidelines range and impose a sentence of 228 months' imprisonment. While we agree with the Probation Office that a downward variance is warranted in this matter, we respectfully submit that the appropriate sentence for Derrick is fifteen years' imprisonment followed by four years' supervised release.

## II.    Fifteen Years' Imprisonment Is Sufficient To Achieve The Goals Of Sentencing

Fifteen years' imprisonment followed by four years' supervised release is appropriate because such a sentence recognizes: (1) how circumstances beyond Derrick's control influenced his choice to engage in the criminal conduct at issue; (2) that Derrick's culpability is mitigated by his age (he is 23 now and was 19 or younger at the time of his offenses) and disabilities; (3) it is proportionate to the sentences received by his more culpable codefendants both those whose behest he was acting at and who were directly responsible for taking the life of another; (4) the unduly punitive conditions of his incarceration over the past 38 months; and (5) that the support system he will have during his incarceration and when he reenters the community will enable him to succeed in his commitment to making this his only term of incarceration. For these reasons, a sentence of fifteen years' imprisonment is sufficient but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

### A.    Factors Outside of Derrick's Control Influenced His Life Trajectory

Born to a sixteen-year-old illiterate, immigrant mother and an incarcerated father, the odds were against Derrick from birth. *See* Social History Report attached hereto as "Exhibit A" at 2. As early as infancy Derrick suffered from severe development delays, resulting in his being placed in the Committee for Preschool Special Education at the age of three. *See* Exhibit A at 2-3. By the time he was four Derrick was classified as a Preschool Student with a Disability. Specific recommendations for his education and therapy were made, but due to lack of availability his case was deferred, and he had to wait until he started kindergarten the next year to begin receiving services. *Id.* at 3. This was the first of multiple instances in Derrick's young life where services that he needed where not provided to him. Notably, when Derrick was provided with structed support in the same environment for prolonged periods of time, he showed marked improvement. *Id*. at 5. After years of struggling but with structed support, Derrick demonstrated real progress in the third and fourth grades. *Id*.

Derrick's disabilities were so severe that at the age of nine he qualified for Supplemental Security Income ("SSI"), something less than 2% of all children in America receive.[2] *Id.* at 6. Like his experience in elementary school, with structured support Derrick made real progress through middle school with the eighth grade, his last year of middle school, being his most successful academic year. *Id.* at 7. Because he had improved so much by the end of the eighth grade, despite still being qualified for SSI, he was enrolled in high school without counseling and with the services that had been provided to him in elementary and middle school scaled back

---

[2] *See* Kathleen Romig, *SSI: A Lifeline for Children with Disabilities*, CENTER ON BUDGET AND POLICY PRIORITIES (May 11, 2017) https://www.cbpp.org/research/social-security/ssi-a-lifeline-for-children-with-disabilities#:~:text=Though%2011%20million%20American%20children,all%20children%20receive%20SSI%20benefits ("Supplemental Security Income (SSI) is the only source of federal income support targeted to families caring for children with disabilities, and it reaches only the lowest-income and most severely impaired children. … just 1.7 percent of all children receive SSI benefits.").

drastically. Derrick was unable to handle high school with the limited support being provided to him. *Id*. at 8-9. Everything came to a head in his sophomore year when following an altercation with the school principal, instead of being taken to the hospital as his mother implored them to do, he was arrested and suspended for 55 days. *Id*. at 10-12. Following his suspension, he attempted to finish his sophomore year at multiple different suspension schools but ultimately dropped out of school at the age of seventeen. *Id*.

His mother, despite her own limitations, tried as best she could to advocate for her son, but was ignored by those in charge that could get him the help he needed. After Derrick dropped out of high school his mother filed a civil suit on his behalf for, among other things, failure of the school to provide Derrick with a free and appropriate education; failure to either determine if Derrick had a disability or provide services for that disability; false arrest; unlawful detention; and negligence. *Id*. at 12. The civil suit was ultimately settled in Derrick's favor in 2020, after his arrest and incarceration. Sadly, it was too little too late. *Id*.

To say the system failed Derrick is an understatement. After dropping out of school, Derrick found himself drawn to the streets and gang life. When his mother and younger sister decided to leave New York for Florida, rather than go with them he made the misguided decision to stay around the male role models that had taken him under their wing. He was entrenched in the streets. Thus, at the age of 18, Derrick, was on his own with only his fellow gang members to rely on for support and guidance. Their guidance led him to where he is today. While this information does not excuse the fact that Derrick chose to engage in criminal conduct, it shows how factors beyond his control influenced his life trajectory.

    B.    Derrick's Age And Disabilities Mitigate His Culpability

A just sentence for Derrick is one that recognizes how his age at the time of the offense and his disabilities made him particularly susceptible to negative influences, resulted in lowered impulse control, and left him with an inability to fully appreciate the consequences of his actions.

Derrick's young age and his documented history of developmental delays and cognitive disabilities mitigate his culpability. All of Derrick's offense conduct occurred when he was 19 or younger. While Derrick accepts full responsibility for his actions, his culpability is mitigated by his age at the time of the offense.

Scientific research confirms that juvenile brains are not yet fully developed. The Supreme Court relied on scientific research in barring the death penalty and mandatory life without parole for juveniles. *See Miller v. Alabama*, 567 U.S. 460, 477 (2012). In so ruling, the Supreme Court held that children were less culpable than adults because of their "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* Brain maturation is incomplete at age nineteen and continues into a person's mid to late twenties.[3]

---

[3] *See* Christian Beaulieu & Catherine Lebel, *Longitudinal Development of Human Brain Wiring Continues from Childhood into Adulthood*, 27 J. Neurosciences 31 (2011); Adolf Pfefferbaum *et al.*, *Variation in Longitudinal Trajectories of Regional Brain Volumes of Healthy Men and Women (Ages 0 to 85) Measures with Atlas-Based Parcellation of MRI*, 65 NeuroImage 176, 176-193 (2013).

Scientific research has identified three developmental differences between youth and adults: youth's lack of maturity and impetuosity; youth's susceptibility to outside influences, especially negative influences; and youth's capacity for change. *See Montgomery v. Louisiana*, 136 S.Ct. 718, 733, L.Ed.2d 599 (2016) (*quoting Miller*, 567 U.S. at 471). "[B]ecause juveniles have diminished culpability and greater prospects for reform,…they are less deserving of the most serious punishments." *Miller*, 567 U.S. at 471. Indeed, these developmental characteristics make juveniles less culpable for their crimes. *See Roper v. Simmons*, 543 U.S. 551, 570 (2005)*, quoting Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988) ("[juvenile] conduct is not as morally reprehensible as that of an adult."). Accordingly, lengthy sentences that may be appropriate for adults are disproportionate when imposed as juveniles. "[C]riminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed." *Graham v. Florida*, 560 U.S. 48, 76 (2010)*.* Thus, the Court should consider Derrick's "chronological age and its hallmark features--among them, immaturity, impetuosity, and failure to appreciate risks and consequences" in sentencing Derrick. *See Miller*, 567 U.S. at 477.

Additionally, as discussed above and at length in Exhibit A, Derrick has suffered with developmental delays and cognitive disabilities since he was an infant. *See* Exhibit A at 2-6. As a juvenile with a long-documented history of developmental delays and cognitive disabilities, Derrick was highly susceptible to peer pressure, had poor impulse control, and struggled with the ability to truly appreciate the consequences of his actions.[4]

Derrick's age and his long history of developmental delays and cognitive disabilities do not excuse the fact that he chose to break the law, however, they are undeniable influences completely out of his control that mitigate his culpability and must be factored into the analysis of what sentence is appropriate in this case. This is particularly true in this case where it is undisputed that Derrick "was acting at the influence of older, more experienced gang members[.]" Sentencing Transcript of Darrell Lawrence ("Lawrence Sent. Tr.") at 13:3-4.

    C.    <u>A Sentence Of Fifteen Years Will Be Proportionate With The Sentences Imposed On Codefendants</u>

The government has made it abundantly clear that the two most culpable codefendants in this case are Darrell Lawrence and Davon McCullough. *See* Lawrence Sent Tr. at 19:5-7 (stating in respect to Lawrence and McCullough, "It's very clear that they view each other as peers and the other codefendants as subordinates."); *id*. at 25:2-5 ("And Mr. Lawrence was a leader of the gang. And for years, he trafficked dangerous drugs, as well as guns. And he directed others in the

---

[4] *See, e.g.*, Jay D. Aronson, *Neuroscience and Juvenile Justice*, 42 Akron L. Rev. 917, 922 (2009) ("numerous psychosocial studies have demonstrated, adolescents are much less capable of making sound decisions under stressful conditions or when peer pressure is strong"); Lamparello, Adam, *IQ, Culpability, and the Criminal Law's Gray Area: Why the Rationale for Reducing the Culpability of Juveniles and Intellectually Disabled Adults Should Apply to Low-IQ Adults* (2019) at 6, available at https://www.researchgate.net/publication/332921107_IQ_Culpability_and_the_Criminal_Law's_Gray_Area_Why_the_Rationale_for_Reducing_the_Culpability_of_Juveniles_and_Intellectually_Disabled_Adults_Should_Apply_to_Low-IQ_Adults/download ("The practical impact is that both teenagers and young adults have a reduced capacity to exhibit higher-level reasoning skills and exercise impulse control. Put simply, the fundamental differences between juvenile and adult minds … relate to parts of the brain involved in behavior control.") (internal quotations and citations omitted).

gang to engage in activity involving firearms and violence."); ECF No. 359 at 1 ("[McCullough] led much younger co-conspirators, including minors, and caused them to engage in equally and even more serious crimes;").

In sentencing both Lawrence and McCullough the Court applied significant downward variances. Lawrence, who had a stipulated Guidelines range of 235 to 293 months, was sentenced to a total of 144 months. McCullough, who had a stipulated Guidelines of 204 months, was sentenced to a total of 156 months. Derrick pled guilty to offenses that subject him to a mandatory minimum term of imprisonment in excess of the sentences received by both Lawrence and McCullough. He did so because he accepts responsibility for the fact that he participated in crimes that resulted in the most serious possible harm, the loss of a human life. The government took the position at Lawrence's sentencing that the sentence imposed on Lawrence should be "commensurate with all of the harm that those younger people are causing." Lawrence Sent. Tr. at 17:18-19. We agree and believe that it would be disproportionate to sentence Derrick to anything above the 180-month mandatory minimum he is facing.

In terms of proportionality, it is also critical to understand that Derrick never intended to participate in a crime where someone would die, and he was not the person who pulled the trigger. As Carlos Rosario recognized in his sentencing submission "over a period of only several months, he had been involved in multiple shootings and a robbery that resulted in the unintentional and tragic death of a young man, for which he takes full responsibility." ECF No. 337 at 11. The Court varied downwardly and sentenced Rosario to the mandatory minimum term he was subject to, the Court should do the same for Derrick. The difference between the mandatory minimum terms Rosario was (240 months) and Derrick is (180 months) subject to account for the fact that Rosario was "one of the most violent and prolific shooters charged in the case" (ECF No. 338 at 3) whose acts of violence included "two nonfatal shootings, an attempted shooting, a brutal assault and slashing, …and a robbery that resulted in the death of another man that [Rosario] shot and killed him." Sentencing Transcript of Carlos Rosario ("Rosario Sent. Tr.") at 11:14-18. Derrick has never taken a life and a proportionate sentence is one that is less than the sentence received by the individual who "committed the single most serious act charged in this case: he took another person's life." ECF No. 338 at 21.

  D. <u>The Unduly Punitive Conditions Of Derrick's Confinement Warrant A Downward Variance</u>

This Court has repeatedly observed that when determining the appropriate sentence it is proper to recognize that the particularly harsh conditions of incarceration during the pandemic make that time effectively more punitive than incarceration prior to the pandemic. *See, e.g.,* Lawrence Sent. Sent. Tr. 26:3-7; Sentencing Transcript of Davon McCullough at 22:6-12. In sentencing Rosario to the mandatory minimum term of twenty years, the Court noted that even if a sentence in excess of the mandatory minimum was necessary to serve the purposes of sentencing, those purposes were served by the over-two-years that Rosario spent incarcerated during the COVID pandemic under extremely difficult and more punitive than usual conditions. *See* Rosario Sent. Tr. at 20:24-21:4.

As of the date of his sentencing, Derrick will have been incarcerated for over 42 months' at least 37 of which were during the pandemic. But for Derrick, who was first housed at the Metropolitan Correctional Center ("MCC"), the near constant lockdowns started prior to the pandemic when

the facility entered into a total lockdown in late February to look for a loaded firearm.[5] Within two weeks after the loaded firearm was located in an inmate's cell, the pandemic hit. In addition to living in constant fear of contracting a potentially deadly virus, the conditions inmates were forced to abide by to help prevent the spread of the virus were the most restrictive possible, often being locked in their cell for 23 hours and 45 minutes a day and going days without showers and hot food. As an individual who thrives on routine and stability and who depends on his mother to help keep him grounded, the near constant lockdowns and the separation from his loved ones was particularly difficult for him to handle. *See* Exhibit A at 14-15.

In May of 2021, Derrick suffered from recurring outbreaks of hives likely caused by the rodent infestation at MCC. He was relieved when in August 2021, he was one of the last inmates to be moved from MCC to the Metropolitan Detention Center ("MDC").[6] His relief was short lived. His suffering was exacerbated in November 2021 when he was brutally attacked by another inmate at the MDC and stabbed 13 times requiring hospitalization. *See* Exhibit A at 15. As this Court has found in the past, the unduly punitive conditions of Derrick's incarceration over the past 38 months warrant a significant downward variance.

Notably, while Derrick, like so many other incarcerated individuals has struggled adjusting to the unduly harsh conditions of detention during the pandemic, in recent months, he has started to find his way. In February of this year, he earned a certificate for completing a commercial driver's license course. *See* BOP Certificate attached hereto as "Exhibit B". Critically, Derrick is committed to earning his GED while incarcerated. He has taken GED courses and studies for it on his own. He is signed up to take the GED and eager for the opportunity, but MDC has not yet provided him with a specific date when he can take it. In addition to the easing of the restrictions imposed during the height of the pandemic, his recent positive adjustment to incarceration is in part attributable to the fact that the one individual whom he is closest to in the world, his mother, recently moved back to New York to enable her to visit Derrick more frequently. The visits from his mother have had a demonstrably positive effect on him.

Most recently, Derrick has used his time incarcerated to reflect on his life. Over the course of many days and many drafts, with a dictionary by his side, Derrick put his reflections to paper to share them with Your Honor. *See* Letter of Derrick Casado attached hereto as "Exhibit C". Exhibit C is the product of true contemplation and speaks volumes as to the deterrent effect the time that Derrick has served and the knowledge that he will be required to be incarcerated for another decade has had on Derrick. Most importantly, Exhibit C speaks to Derrick's remorse for his actions and his acceptance of responsibility and demonstrates his commitment to ensuring his incarceration will be his last.

---

[5] *See* Lauren de Valle, *Loaded Firearm Found In New York Federal Prison*, CNN (Mar. 6, 2020) https://www.cnn.com/2020/03/06/us/new-york-mcc-loaded-firearm-found/index.html

[6] *See* Benjamin Weiser, *Justice Dept. to Close Troubled Jail Where Jeffrey Epstein Died*, Aug. 26, 2021, NEW YORK TIMES (Aug. 26, 2021) https://www.nytimes.com/2021/08/26/nyregion/MCC-epstein-jail-closed.html

**GOTLIB LAW**

  E. <u>The Support System Derrick Will Have During And After His Incarceration Will Enable Him To Succeed In His Commitment To Making His First Period Of Incarceration His Last</u>

While it pains Derrick to be separated from his loved ones, he has come to appreciate the positive effects of his arrest and incarceration, *i.e.*, his sobriety for the past 42 months, the deterrent effect it has had on him, his determination to earn a high school degree, and his commitment to ensuring that his first period of incarceration will be his last. Derrick appreciates that to succeed in his commitment to leading a life-devoid of criminality he will need all the support and help that he can get. He is eager to take advantage of all the resources and support that the Probation Office can provide him. He is confident that equipped with such tools and the support of his loved ones he will succeed in earning his high school degree and ensuring that his current period of incarceration is his only one. His loved ones agree and are ready to provide him with all the support he needs. As noted in Exhibit A, Derrick's mother and immediate family members are illiterate and/or do not speak English. They are writing letters of support with the assistance of others, but it is taking time. We will file the letters as a supplemental sentencing submission as soon as practicable. However, despite no longer being in a romantic relationship, Derrick's ex-girlfriend wrote a letter to the Court in his support. *See* Letter of Genairy Lopez attached hereto as "Exhibit D". In her letter Ms. Lopez explains to the Court that while she fully appreciates the severity of Derrick's crimes, she still cares deeply for him and notes he is dearly missed by herself and his family.

Derrick has missed an incredible number of important moments with his family already and he is acutely aware of that. He struggles knowing how much more he will miss. But he is eternally grateful that his loved ones are willing to stand by him despite the knowledge of his crimes and that he will be gone for many more years. That is because they see him at his heart, the true Derrick, who despite the terrible choices and the pain he has caused, they continue to want in their lives. If given the chance to prove himself, those that know him best and Derrick himself are all confident that he will succeed.

**III. Conclusion**

For all the foregoing reasons, it is respectfully requested that the Court sentence Derrick to fifteen years' imprisonment followed by four years' supervised release.

Respectfully Submitted,

  /s/

Valerie A. Gotlib
Jacob B. Mitchell


cc: All counsel of record (*via* ECF)

Gotlib Law, PLLC
225 Broadway | Suite 2815 | New York | NY | 10007
T 917 536 8171 | F 917 970 8158 | valerie@gotliblaw.com